UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

RASCHINNA CRAIG,
        Plaintiff,

        v.                                                                Case No. 3:13-cv-0281 (VAB)

UNIVERSITY OF CONNECTICUT
HEALTH CENTER,
        Defendant.

**RULING ON DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Raschinna Craig, has brought this lawsuit against her former employer, University of Connecticut Health Center ("UCH"), arising out of her treatment by UCH during her pregnancy. The Court dismissed all but one of her claims in its ruling on UCH's Motion to Dismiss. Ruling on Mot. to Dismiss, ECF No. 16. Ms. Craig's sole remaining claim is that UCH violated the Federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, by terminating her before she could take maternity leave. Compl. at Count One, ECF No. 1. She seeks damages, costs, attorney's fees, and restoration to her previous position or an equivalent. *Id.* at Count One and Prayer for Relief.

UCH now moves for summary judgment on this claim. Mot. for Summ. J., ECF No. 46. For the reasons that follow, the motion is **GRANTED**.

**I.**    **Statement of Facts**

Plaintiff did not file a Local Rule 56(a)2 Statement as required by this Court's Local Rule 56(a)2. In absence of a Local Rule 56(a)2 Statement, "all material facts" set forth in the Local Rule 56(a)1 Statement that are supported by evidence in the record are admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("all material facts set forth in [the movant's Local Rule 56(a)1 Statement] will

1

be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2."); *see also e.g.*, *Cashman v. Ricigliano*, No. Civ. 3:02CV1423(MRK), 2004 WL 1920798, at *1 n.2 (D. Conn. Aug. 25, 2004) (deeming facts in a Local Rule 56(a)1 Statement admitted because the opposing party did not file a Local Rule 56(a)2 Statement); *August v. Dep't of Corrections*, 424 F. Supp. 2d 363, 365 n.2 (D. Conn. 2006) (same); *see also Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (in adjudicating motions for summary judgment, courts "must be satisfied that the citation to evidence in the record supports the assertion").  Accordingly, the following facts are taken from UCH's Local Rule 56(a)1 Statement, as supported by the evidence submitted by the parties.

Ms. Craig began working for UCH in November 2001 and was promoted to various positions during her tenure there.  Def.'s Local Rule 56(a)1 Stmt. ¶¶1-2, ECF No. 50.  Ms. Craig also gave birth to one child in September 2009 and another in December 2010.  *Id.* ¶¶ 15, 87.

On January 7, 2009, Ms. Craig's supervisor e-mailed her information about FMLA leave. *Id.* ¶10.  Ms. Craig responded that she had doctor's appointments coming up to address her "chronic back pain" and "chronic headaches" and that she wished she had known she was eligible for FMLA leave "awhile ago."  *Id.* ¶11.

In the months leading up to the birth of her child in September 2009, Ms. Craig worked fewer hours than she had in the past and took ten sick days and twenty-four unpaid sick days.  *Id.* ¶¶ 17-18.  On August 18, 2009, she began a maternity leave under the Federal FMLA, because she was experiencing breathing complications, chest pain, and extreme fatigue related to the pregnancy.  *Id.* ¶¶ 14, 16, 20.  In support of this maternity leave, she submitted all of the forms UCH required, including a medical certificate from her doctor.  *Id.* ¶¶ 27-28, 33.

Ms. Craig returned to work from this maternity leave on January 8, 2010, having exhausted her Federal FMLA leave for the year. *Id.* ¶ 21.[1] Shortly after returning to work, Ms. Craig became pregnant again and gave birth to another child in December 2010. *Id.* ¶ 82.

She testified that, in April 2010, she discussed the pregnancy and her interest in FMLA leave in the future with Joann LaMere, who was responsible for approving FMLA leaves at UCH. Def.'s Ex. A, Craig Dep. 42:2-43:-2, ECF No. 51-2. LaMere has not confirmed this conversation took place anywhere in the record. Ms. Craig also testified that she did not tell anyone else at UCH about her pregnancy and possible need for leave in the future. *Id.* at 102:2-5. There is no other evidence in the record indicating that she told anyone she was pregnant until October 2010.

Upon her return from her initial maternity leave, Ms. Craig was scheduled to work 30 hours a week, six hours per workday. Def.'s Local Rule 56(a)1 Stmt. ¶ 39, ECF No. 50. Ms. Craig testified that she arranged a reduced work schedule with UCH so that she could parent her children. Pl.'s Ex. 4, Craig Decl. ¶¶ 1-4, ECF No. 56.

Ms. Craig's time records reveal, that after returning from maternity leave, except for one week in February 2010, she worked less than the 30 hours per week that UCH expected until August 2010. Def.'s Local Rule 56(a)1 Stmt. ¶ 40, ECF No. 50. In April 2010, Ms. Craig's supervisor held a meeting with her and "several others" to address concerns about her time and attendance at work. *Id.* ¶ 43. She was told that her attendance needed to improve immediately and that she could contact LaMere to determine whether she qualified for additional FMLA leave. *Id.* ¶¶ 44-45.

---

[1] Ms. Craig had also taken additional time beyond that authorized by the Federal FMLA under Connecticut's FMLA. Def.'s Local Rule 56(a) Stmt. ¶ 21, ECF No. 50.

On May 12, 2010, Ms. Craig's supervisor followed up with Ms. Craig in a memorandum, indicating that her attendance had not improved and reminding her that she needed to provide a medical certificate for any absence related to illness.  *Id.* ¶¶46-47.  The memorandum also indicated that "[u]nauthorized days without pay are grounds for dismissal from employment." *Id.* ¶47.

On October 20, 2010, Ms. Craig e-mailed Joann LaMere to ask about her eligibility for leave under the Federal FMLA.  *Id.* ¶ 48.  LaMere responded that she was ineligible for Federal FMLA leave at the time, because she had not worked more than 1,250 hours during the year preceding the request.  *Id.* ¶ 49.  LaMere also explained that, under Connecticut's FMLA, Ms. Craig was entitled to four more weeks of leave until August 18, 2011.  *Id.*  Ms. Craig asked LaMere for the required forms to apply for FMLA leave, which she provided to her.  *Id.* ¶¶ 50-51.  These forms were similar to the ones Ms. Craig had filled out for her maternity leave the previous year.  *Id.* ¶ 51.  LaMere also reiterated that Ms. Craig was only entitled to four weeks of leave under the Connecticut FMLA, but that she could take unpaid personal leave after that time expired and that she would be responsible for the "COBRA" rates on her health insurance during that leave.  *Id.* ¶ 52.

Starting on October 25, 2010, Ms. Craig stopped coming to work.  *Id.* ¶¶ 53-54, 77.  UCH claims that she failed to clearly communicate that she would not return to work or why she was absent.  Ms. Craig testified that she would have told someone that she could not come into work, but could not recall the identity of that person.  Def.'s Ex. A, Craig Dep. 102:20-103:23, ECF No. 51-2.

On November 1, 2010, LaMere sent Ms. Craig a "standard" letter with the necessary medical forms UCH required for her Connecticut FMLA leave.  Def.'s Local Rule 56(a)1 Stmt.

4

¶¶ 55-56, ECF No. 50; Defs.' Ex. B, LaMere Aff. ¶ 39, ECF No. 51-3.[2]  The letter also provided that Ms. Craig needed to submit the forms by November 15, 2010.  Def.'s Local Rule 56(a)1 Stmt. ¶ 57, ECF No. 50.  Ms. Craig failed to respond to the letter or to submit the requested documentation by that deadline.  *Id.* ¶¶ 73-74.

On November 16, 2010, LaMere sent a letter to Ms. Craig, via certified mail return receipt requested, indicating that her failure to submit the appropriate forms resulted in UCH considering her medical leave beginning on October 25, 2010 as "unauthorized."  *Id.* ¶77.  Ms. Craig's mother sent medical forms to UCH by fax on November 19, 2010, but UCH claims that LaMere's office did not receive any such fax.  *Id.* ¶¶74-75, 83.  Moreover, the forms failed to identify the name of the employee, doctor, or any other information that would have allowed UCH to determine that the paperwork related to Ms. Craig.  *Id.* ¶83-85, 89; *see also* Def.'s Ex. M, Fax dated Nov. 19, 2010, ECF No. 51-14.[3]  UCH employs 5,700 people, who take roughly 1,000 to 1,200 medical leaves annually and fifty of who take pregnancy-related medical leave.  Def.'s Local Rule 56(a)1 Stmt. ¶¶91-93, ECF No. 50.

As of November 24, 2010, UCH believed it had still not received any medical paperwork from Ms. Craig.  *Id.* ¶79.  As a result, UCH sent Ms. Craig a letter by certified mail on November 24, 2010, indicating that her employment was being terminated.  *Id.* ¶ 80.  UCH received the return receipt on the letter but could not identify the signature.  *Id.* ¶ 81.  Ms. Craig did not receive the letter from her mother until after her child was born in December 2010.  *Id.* ¶ 82.

---

[2] The letter was sent to Ms. Craig's childhood residence, where her mother still resided.  Def.'s Local Rule 56(a)1 Stmt. ¶¶ 65-66, ECF No. 50.  At the time the letter was sent, she resided elsewhere, but her mother had delivered other mail from UCH to her in the past.  *Id.* ¶ 67.

[3] Ms. Craig testified that the forms lacked her identifying information, because UCH had failed to fill them out properly.  Def.'s Ex. A, Craig Dep. 150:7-151:10, 151:21-152:15, ECF No. 51-2.

## II.     Standard

A party who moves for summary judgment bears the burden of establishing that there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  When ruling on a motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  An issue of fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if it could cause a reasonable jury to return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248.  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.    Discussion

The FMLA provides that eligible employees may take up to twelve weeks of job-protected unpaid leave for qualifying reasons in any twelve-month period.  29 U.S.C. § 2612.  The Connecticut analog to the Federal FMLA provides employees with up to sixteen weeks of job-protected unpaid leave in any twenty-four month period.  Conn. Gen. Stat. § 31-51ll.

UCH claims that, when Ms. Craig applied for the maternity leave relevant to this lawsuit in Fall 2010, she was ineligible for Federal FMLA leave, because she had not worked enough during the preceding twelve months.  The Court agrees and, therefore, dismisses Ms. Craig's

Federal FMLA claim.[4]  Because she has not pled a Connecticut FMLA claim, the case is dismissed.[5]

The Federal FMLA makes it "unlawful for any employer to interfere with, retrain, or deny the exercise of or the attempt to exercise" rights provided by the Act.  29 U.S.C. § 2615(a)(1).  To be eligible for Federal FMLA leave, an employee must have been employed "for at least twelve months by the employer" and have completed "at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A); *see also Woodford v. Cmty. Action of Greene Cnty., Inc.*, 268 F.3d 51, 54 (2d Cir. 2001) ("In order to be eligible for FMLA benefits, an employee must have been employed for at least twelve months with an employer and have worked at least 1,250 hours in the twelve months preceding the date on which eligibility is determined.").  Eligibility is determined on the date the FMLA leave begins.  29 C.F.R. § 825.110(d).

Ms. Craig began her leave on October 25, 2010.  Thus, for summary judgment to be warranted, UCH must show that between October 25, 2009 and October 25, 2010, she had worked fewer than 1,250 hours.  According to UCH's time records, Ms. Craig has worked fewer than 1,250 hours during that time period.  Def.'s Ex. F, Timesheets, ECF No. 51-7 at 19 (showing that from October 23, 2009 to December 22, 2010, Ms. Craig worked 888.25 hours and

---

[4] UCH claims that sovereign immunity precludes Ms. Craig's Federal FMLA claim under *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012).  However, in this case, because the Federal FMLA does not apply to the leave at issue, the Court does not address whether sovereign immunity would apply, if the statute were applicable.

[5] In any event, even if she had pled a Connecticut FMLA claim, the Court would have declined to exercise supplemental jurisdiction over the case, having dismissed the only claim providing a basis for federal jurisdiction over the case.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . .  the district court has dismissed all claims over which it has original jurisdiction."); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001); *see also Kelly v. Signet Star Re, LLC*, 971 F. Supp. 2d 237, 254 (D. Conn. 2013) ("[T]his Court is reluctant to exercise supplemental jurisdiction in non-diversity cases, given that under 28 U.S.C. §§ 1367(c) and (c)(3), United States district courts may decline to exercise supplemental jurisdiction over a claim if they have dismissed all claims over which [they] ha[d] original jurisdiction . . . . The Second Circuit [ ] explained that . . .  if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.") (citations and internal quotation marks omitted).

was paid for a total of 1,150.75 hours, including paid leaves and vacations). Indeed, Ms. Craig admits she worked fewer than 1,250 hours and does not present any contrary evidence. *See* Pl.'s Opp. Br. 2, 9, ECF No. 56. Nevertheless, Ms. Craig claims that UCH still violated the FMLA, because it failed to advised her of the number of hours she needed to work annually to be eligible for FMLA leave when she agreed to reduce her work schedule at beginning of 2010. *Id.* at 9-10. The Court disagrees.

Ms. Craig's failure to advise claim fails for two reasons. First, she has not disputed that, as a matter of fact, she worked fewer than the 1,250 hours required to be eligible for Federal FMLA leave. The FMLA only provides a private cause of action to "eligible employees." 29 U.S.C. § 2617(a)(1) ("Any employer who violates section 2615 of this title shall be liable to any eligible employee affected . . ."); *Kosakow*, 274 F.3d at 724 (noting that only an employee eligible for the FMLA's protection can bring a cause of action for violation of the statute's notice provision, assuming without deciding that such a legal cause of action exists and noting that "[t]he FMLA does not provide a private right of action for any employee, only for eligible employee[s].") (internal quotation marks and citation omitted). Because there is no factual dispute that Ms. Craig did not work enough hours in the twelve months before her request for leave to be eligible for Federal FMLA leave, she cannot bring a claim under that Act. In other words, even assuming that UCH had an obligation to provide information about the FMLA as Ms. Craig claims, its failure to do so cannot make Ms. Craig an eligible employee. *See e.g.*, *Fulham v. HSBC Bank USA*, No. 99 CIV. 11054(JGK), 2001 WL 1029051, at *8 n.5 (S.D.N.Y. Sept. 6, 2001) (rejecting a plaintiff's argument that his employer's failure to inform him in a timely manner that he was not eligible for FMLA leave entitled him to FMLA leave).

Second, even if she were an eligible employee, Ms. Craig fails to show that the FMLA requires employers to provide the type of notice and advice she seeks.  The FMLA obligates employers to post or provide general notices about the Act.  *See* 29 U.S.C. § 2619(a) ("Each employer shall post . . . a notice . . . setting forth excerpts from, or summaries of, the pertinent provisions of this subchapter and information pertaining to the filing of a charge."); 29 C.F.R. § 825.300(a).  It requires this general notice to be provided to each eligible employee, "upon hiring."  *Id.* § 825.300(a)(3).  If an employer provides a handbook, the FMLA regulations also obligate the employer to include information about the FMLA in that handbook.[6]  *Id.*  This general notice must include information about eligibility, including the 1,250 hours requirement. *See id.* § 825.300(a)(4) (to comply with subsection (a)(3), an employer must provide all information contained in the Department of Labor's "prototype notice" available at WH Publication 1420); WH Publication 1420, *available at* https://www.dol.gov/whd/regs/compliance/posters/fmla.htm (last visited Aug. 19, 2016)).

The FMLA also requires more individualized notices and assessments of an employee's eligibility for the Act's protections, after an employer learns that an employee is requesting leave or could be eligible for leave.  *See e.g.*, 29 C.F.R. § 825.300(b)(1) ("When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of [his] eligibility to take FMLA leave within five business days . . . ."); *id.* § 825.300(c)(1) (requiring notice be provided to employees "detailing the specific expectations and obligations of the employee" each time the eligibility notice is provided under subsection (b)(1)); *id.* §825.305(d) (when an employer

---

[6] The FMLA expressly provides the Secretary of Labor authority to "prescribe such regulations as are necessary" to carry out the Act.  29 U.S.C. § 2654.

9

requests a medical certification, it must "advise an employee of the anticipated consequences of an employee's failure to provide adequate certification").

The FMLA's notice requirements, however, do not create an independent cause of action for employees. *Sarno-Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir. 1999). Some courts have recognized that an employee may have an interference claim where an employer's failure to advise his employee of his FMLA rights prevented that person from exercising FMLA rights. *See e.g.*, *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 138, 143 (3d Cir. 2004); *Fritz v. Eye Center*, Civil No. 3:10-CV-33 (JCH), 2010 WL 3210863, at *3 (D. Conn. Aug. 12, 2010) ("If there are issues of fact which, if true, would establish that plaintiff was somehow hindered from exercising her rights by defendant's failure to provide notice of the protections afford under the [FMLA], plaintiff may state" an interference claim) (internal quotation marks and citation omitted); *see also Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 723-24 (2d Cir. 2001) (discussing a district court's finding that "a distinct cause of action lies for an employer's failure to post a notice where that failure leads to some injury" and explicitly declining to address the "validity" of that type of claim). Crucial to establishing this type of "failure to advise" FMLA claim is showing that an employee was prejudiced by the employer's failure to advise her of her rights. *See e.g.*, *Conoshenti*, 364 F.3d at 144 (finding an interference claim based on a failure to advise an employee of FMLA rights actionable where the plaintiff could show "prejudice as a result"); *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 515 (S.D.N.Y. 2012) (granting summary judgment on a failure to advise FMLA claim because plaintiff failed to show that he would have "exercised his or her FMLA rights in the absence of the employer's actions") (citation and internal quotation marks omitted).

Ms. Craig believes that UCH had an obligation, when she was discussing reducing her work schedule to 30 hours per week, to provide her with an individualized explanation that the "reduction would seriously reduce [her] eligibility for FMLA in the future." Craig. Decl. ¶ 9, ECF No. 56.  But the FMLA does not require such an individualized conversation about the FMLA every time an employee changes his or her work schedule.  Instead, it only requires a general notice to be posted and provided to employees when they are hired.

As described above, in some circumstances, the FMLA does require the employer to provide an employee with a more individualized assessment of his or her FMLA eligibility and the requirements for taking leave.  But these obligations are triggered only when the employer learns that an employee either seeks leave or has a condition that could qualify for FMLA leave. *See e.g.*, *Conoshenti*, 364 F.3d at 138, 142 (holding that an employer was required to advice its employee of his rights under the FMLA after he had properly given notice of a "serious health condition" by telling his superior that he was involved in a serious car accident and needed to be out of work for various medical reasons); *Cunha v. Winn Cos.*, No. 3:13-cv-01789 (MPS), 2014 U.S. Dist. LEXIS 85348, at 3, 7-8 (D. Conn. June 24, 2014) (dismissing a complaint alleging that "Defendant knew that [plaintiff] may have needed to take leave due to a serious health condition, but [ ] did not notify him of his eligibility to take leave under the FMLA" until a few days later because he had not alleged that he had been prejudiced).  Ms. Craig has failed to present any evidence that, when she adjusted her work schedule, UCH knew that she was pregnant, about to become pregnant, or planned to take additional FMLA leave in the future.  Thus, it had no obligation to provide her with an individualized assessment of her FMLA eligibility at that time. *See e.g.*, *Golden v. New York City Dep't. of Environmental Protection*, No. 06 CIV. 1587 (DLC), 2007 WL 4258241, at *2 n.5 (S.D.N.Y. Dec. 3, 2007) ("The requirement [for an employer] to

give notice does not affect cases that concern an unforeseeable need for leave.") (citing *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 983 (5th Cir. 1998)).

There is also no evidence that UCH provided Ms. Craig with misinformation about her FMLA rights. *Cf. Ridgeway v. Royal Bank of Scot. Grp.*, CIVIL ACTION NO. 3:11-cv-976(VLB), 2013 U.S. Dist. LEXIS 67822, at 57-59 (D. Conn. May 13, 2013) (finding triable issues of fact existed on an FMLA interference claim where evidence supported an inference that plaintiff's employer was providing him with incorrect information about the FMLA's requirements and that with the correct information, he could have postponed his surgery until he was eligible for FMLA leave).

### IV. Conclusion

For all of the foregoing reasons, UCH's Motion for Summary Judgment, ECF No. 46, is **GRANTED**.  The Clerk is directed to enter judgment for the Defendant and close the case.

**SO ORDERED** this 30th of August 2016 at Bridgeport, Connecticut.

        /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE